UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-130-RJC

| | |
|---|---|
| CHRISTOPHER D. ELLERBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| BOYD BENNETT, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on motions for summary judgment filed by the Defendants and by Plaintiff. For the reasons that follow, the Court concludes that Defendants' motions for summary judgment should be GRANTED and Plaintiff's motion should be DENIED.

**I.  BACKGROUND**

Plaintiff, while housed at the Lanesboro Correctional Institution, filed a complaint naming twenty-eight defendants and therein alleged that the defendants, in various individual capacities, and collectively at times, violated his Eighth Amendment rights to be free from excessive force and cruel and unusual punishment, and that one or more defendants was deliberately indifferent to his serious medical needs.[1]

According to his complaint, Plaintiff was masturbating, or as he terms it, relieving

---

[1] On an initial review of Plaintiff's complaint, the Court found that Plaintiff had failed to state claims for relief against Defendants North Carolina Prisoner Legal Services; Jerline Bennett; Glenn Kinney; E.D. Wallace; Captain Wyatt; Rick Jackson; Correctional Officers Goodwin, Marsden, and Zimmerman; Kory Dalrymple; and Director of Prisons Boyd Bennett. Accordingly, the Court entered an Order dismissing these Defendants from the lawsuit. (Doc. No. 10).

1

himself in his cell while standing at his toilet. Defendant Nicholson, a correctional officer, was walking near his cell during lunch service, and she observed Plaintiff masturbating.[2] Plaintiff alleges that Nicholson reacted by saying that "you are doing that towards me" and "I'm going to gas you." (Doc. No. 1 at 13). Next, Plaintiff alleges that Nicholson opened the door to his food slot and began spraying him with pepper spray. Nicholson then yelled for Defendant Sturdivant to bring a larger can of mace for use on Plaintiff.

Plaintiff then dropped into a defensive posture and employed his bed sheet in an effort to stave off the chemical spray, yet the spray continued with officer Triplett, who had recently responded to the scene, and Sturdivant pulling his bed sheet and blanket through the food service door. Plaintiff protested that there was no reason for the officers to continue "to be using so much pepper spray on Plaintiff," but Plaintiff was ignored by the Defendants. (Id.). Plaintiff contends the pepper spray caused him breathing difficulties, and severe coughing and nausea.

Plaintiff expressed that he refused to submit to handcuffs because he feared that the pepper spray would continue. According to Plaintiff, when he refused to respond to Nicholson's order to submit to handcuffs, Nicholson stated, "I'm coming in there to get you." (Id. at 14). An extraction team was assembled which consisted of Nicholson, Sturdivant, Gaddy, Nance, and Sergeant Pressley. When the extraction team entered his cell, Plaintiff was on the floor of his cell under his mattress in an effort to protect himself. The team yanked the mattress away, and according to Plaintiff, they began beating him about the body, head and face. Plaintiff alleges that he suffered a "bloody nose, severe head trauma, and damage to his right rib cage." (Id. at

---

[2] The allegations set out in the Background section are taken from Plaintiff's complaint without regard to whether one or more Defendants present a competing version of the events. To the extent there is a competing version, that will be addressed, as necessary, in detail below.

14-15).

The team then placed Plaintiff in handcuffs and leg restraints which Plaintiff asserts caused him to suffer a lack of circulation and severe pain. (Id. at 15). Plaintiff was removed from his cell and taken towards a shower where Plaintiff contends Defendants Sturdivant, Pressley, Nance, Gaddy, and Stanback "held Plaintiff's arms as Defendant Sgt. Pressley proceeded to [ram] deliberately Plaintiff's head into the railing." (Id. at 15).

Plaintiff was placed in the shower and eventually allowed to strip his clothing in an effort to wash away the pepper spray, or decontaminate. While undertaking this effort, Defendant Pressley began spraying Plaintiff with pepper spray in his eyes, and face, and eventually on his genitals. Plaintiff was later able to shower and received medical attention. Plaintiff complained about dizziness which he attributed to the assault and requested a wheelchair. This request was denied by Defendant Heh.

After this initial medical treatment, over the next several days Plaintiff continued to complain about pain in his head and body that he sustained during the extraction, but he was not satisfied with the Defendants' response. Plaintiff again requested a wheelchair, but this access was denied, and Plaintiff was transported within the prison with the help of a push cart and officers Marsden and Zimmerman while in full restraints. (Id. at 19).

Plaintiff was transferred to a new cell and had to take his meals there because he claimed that the pain he suffered from the extraction was so severe. (Id. at 20). Plaintiff continued to request medical treatment with no apparent success over the next few days. While in his cell, Plaintiff tried to stand and he became dizzy and hit his head on a sink before falling to the floor. Defendant Tucker apparently witnessed the fall and called in the accident. According to Plaintiff, Defendants Hinkel and Campbell responded thirty minutes later and continued to deny him

3

medical treatment. (Id. at 21).

Plaintiff appeared before Defendant Dennis Marshall for the charge of masturbating in his cell, a B-06 offense. Plaintiff denied the charges and complained about the unnecessary "assault" he suffered during the extraction. Plaintiff filed written grievances complaining about the extraction procedure but these were all denied. Plaintiff was later found guilty of the B-06 charge. (Id. at 21-22).

Defendants Harris and Lilly treated Plaintiff for the injuries he sustained in the extraction with Motrin® and was examined by a physician's assistant, Dr. Hassan, and he received further medicine for his pain and he was x-rayed. (Id. at 22). Plaintiff alleges that he received medical treatment, off and on, upon his request, but that the treatment was infrequent, or delayed and unacceptable.

Further facts will be discussed as needed herein.

## II. LEGAL STANDARD

### A. Section 1983

Section 1983 provides a remedy where a person acting under color of state law deprives someone of a right secured by federal law. Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights. See Maine v. Thibotout, 448 U.S. 1 (1980); see also Gonzaga University v. Doe, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by a statute to support a Section 1983 claim); Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 107-08, n.4 (1989) (A claim "based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff ."). A pro se complaint in a proceeding *in forma pauperis* must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the

liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.3d 387 (4th Cir. 1990).

B.  Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp. 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A material fact is one that has the possibility to impact the outcome of the lawsuit under the governing law. Id. at 247-48.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden of providing evidence is met, the burden then shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a properly supported motion for summary

5

judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

## III. DISCUSSION

Plaintiff explains in his complaint, (Doc. No. 1 at 13), and in his response to Defendants' motion for summary judgment, (Doc No. 88 at 17-18), that he was "only masturbating and his refusal to . . . . . . allow defendants to come in his cell and remove his property as punishment for [masturbating] was justifiable regarding the refusal." For the reasons that follow, the Court finds that the officers' lawful commands to Plaintiff to submit to extraction, and the resulting use of force which was caused by Plaintiff's admitted refusal to submit to lawful authority, do not support Plaintiff's claims of excessive force or indifference to serious medical needs.

### A. Inadequate Medical Care

In order for liability to attach in a Section 1983 action, a defendant's conduct must have been the cause of the alleged constitutional or statutory violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). The Eighth Amendment protects inmates from prison officials or prison medical personnel who act with deliberate indifference to their serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 831 (1994). Deliberate indifference requires proof that the defendants knew of and purposefully ignored "an excessive risk to inmate health or safety . . ." Id. at 837. The evidence must show that the defendant was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 130 S. Ct.

1175 (2010).

In order for a prisoner to state a valid claim for inadequate medical care, the prisoner must first allege facts in his complaint which are sufficient to show that (1) he has a serious medical need, and (2) that prison officials are not providing adequate medical care to address his medical need. Farmer, 51 U.S. at 831; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Next, the prisoner must show that a prison official was aware of the medical need, and then failed to provide the necessary medical treatment. Estelle v. Gamble, 429 U.S. 97, 106 (1976). A plaintiff does not set out an actionable claim for a violation of the Eighth Amendment based on "negligen[ce] in diagnosing or treating a medical condition." Id. at 105-06.

1. Defendant JoAnn Santa Lucia

Defendant Santa Lucia worked as a nurse in Lanesboro Correctional on a contract basis. She was assigned to work at Lanesboro from on or about September 22, 2008, until December 19, 2008, and from on or about January 5, 2009, until April 11, 2009. (Doc. No. 83-1: Affidavit of Santa Lucia ("Santa Lucia Aff.") ¶¶ 2-4). On or about December 1, 2008, Plaintiff complained of head and body pains resulting from the extraction and was seen by Lucia and Defendant Harris. According to Lucia's affidavit, Plaintiff "wanted to declare a medical emergency for dizziness, and [Lucia] was instructed to evaluate [Plaintiff's] condition." (Id. ¶ 8). Lucia arrived at Plaintiff's cell and he was standing inside his cell door speaking with a prison chaplain. Based on her observations, Lucia concluded that Plaintiff had not made out a case for an emergency, and Plaintiff was instructed to put in for a sick-call. (Id. ¶¶ 8-10). Following this interaction on December 1, Lucia reviewed Plaintiff's medical records from November 27, the day of the extraction, through December 1, and noted that Plaintiff had medical calls during this time and complained of similar symptoms, that is, head and body pain. Lucia concluded,

7

however, that none of these records "showed an emergency or life-threatening event." (Id. ¶ 11).

According to the policies in place during the dates alleged Plaintiff's complaint, the North Carolina Division of Prisons' "Health Services Policy and Procedural Manual" governed inmate care in the prisons. According to this policy, an inmate requesting medical care must submit a request for sick call and then a registered nurse evaluates the request and schedules an appointment unless an "emergency" situation is found to exist by the evaluating nurse. The policy defines an "emergency" as a threat to the life and/or limb of the inmate. (Id. at 6; see Exhibit A *attached to* Lucia's Affidavit).

Lucia's evaluation of Plaintiff's medical records, and her interaction with Plaintiff, led her to conclude that Plaintiff had failed to meet the criteria for a medical emergency, and he was therefore instructed to make a sick-call appointment. Plaintiff contends that he was denied treatment during this December 1st evaluation, but he does not contend that his situation is such that it was an emergency which would exempt him from the normal procedures for obtaining a medical appointment. (Doc. No. 1 ¶ 22).[3] On December 2nd, Plaintiff contends that he coughed up blood into a disposable cup and handed the cup to an officer who in turn delivered it to Defendants Lucia and Harris. Plaintiff does not allege this situation presented an emergency, nor does he offer any evidence of the same, but Plaintiff again complains that he was denied medical treatment by Defendants Lucia and Harris. (Id. at 20 ¶¶ 31, 33). Finally, Plaintiff was seen by Lucia on or about January 14, 2009, for a scheduled sick call appointment to deal with "continuing pains associated with his injuries." (Lucia Aff. ¶ 14; Doc. No. 1 at 24 ¶ 49). According to Plaintiff, he was given Tylenol and referred to Dr. Hassan, from whom he had been

---

[3]Plaintiff was allowed to amend his complaint to substitute Nurse Santa Lucia for Defendant Stevens, and all allegations raising Stevens' name refer to Lucia. (Doc. No. 29).

8

receiving medical treatment.

These three requests for treatment represent the whole of the allegations against Lucia. The allegations, and evidence presented, demonstrate that Plaintiff presented complaints about pain in his body and head, and that he was aware of the sick-call procedure. That Plaintiff did not receive immediate, emergency treatment in response to his requests for sick call cannot support a claim of deliberate indifference. It is clear from the evidence presented by Lucia that she was following the policy in place at the time she worked at Lanesboro. In her professional opinion, Plaintiff did not present with symptoms which rose to the level of an emergency and she would therefore have had no choice but to instruct Plaintiff to file a request for sick call.

Plaintiff does not contend that the policies in place relating to scheduling sick call were in any way in violation of the Eighth Amendment. Plaintiff must demonstrate facts which could support a finding that Lucia knew of and disregarded "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Plaintiff's allegations, at best, could set forth a claim that Lucia was mistaken in her assessment of his pain, or even negligent, however, that showing will not suffice to support a constitutional claim of deliberate indifference. See Estelle, 429 U.S. at 106 (finding that negligence or even malpractice does not violate the Eighth Amendment). Accordingly, the complaint against Lucia should be dismissed and her motion for summary judgment granted as to all claims pled against her.[4]

---

[4] Defendants' counsel notes that Plaintiff has pled constitutional claims far in excess of those which are actionable in this Section 1983 case. For example, Plaintiff contends that Lucia, Campbell and Harris violated his rights, while being medically indifferent, as those rights are guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment. (Doc. No. 1 at 29-20, 33-34). As has been explained in the governing cases, a claim for medical indifference implicates rights protected by the Eighth Amendment as incorporated against the States by the Fourteenth Amendment. Plaintiff's claims, to the extent they do not raise a claim under the Eighth and Fourteenth Amendments are to be dismissed against all Defendants, unless otherwise

2. Defendants Campbell and Harris

Plaintiff alleges that Defendants Campbell and Harris were also medically indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. In his complaint, Plaintiff includes allegations in paragraphs 22, 31, 33, 34 and 40 against Campbell and/or Harris.

Defendants Campbell and Harris were employed by a private company and provided nursing services at Lanesboro under contract during the times alleged in Plaintiff's complaint. (Doc. No. 86-1: Affidavit of Veronica Campbell ("Campbell Aff.") ¶ 3; Doc. No. 86-2: Affidavit of Joanne Harris ("Harris Aff.") ¶ 3).

In paragraph 34 of his complaint, Plaintiff sets out his only factual allegations against Defendant Campbell. On December 3, 2008, Plaintiff alleges that he became dizzy and fell and hit his head on a sink in his cell. Defendants Campbell and Hinkel were summoned to "respond to the emergency." Plaintiff contends that it took Campbell and Hinkel thirty minutes to respond to his cell. Plaintiff contends that he informed Campbell and Hinkel of his pain and dizziness and that he had been expelling blood. Despite this information, Plaintiff asserts that Campbell and Hinkle refused to provide him with medical treatment.

Campbell's affidavit states that on December 3, she did in fact respond to Plaintiff's cell where she found him lying on his right side. Plaintiff was physically uncooperative and was loathe to respond to medical questions. Campbell notes that Plaintiff's vital signs were taken which were normal and no bruising or swelling was noted. Specifically, Campbell noted no "symptoms of distress. His vital signs and/or injuries were noted. [Prison staff] was instructed to

---

specified herein.

follow monitoring procedures closely and to notify medical if any additional care was needed." (Campbell Aff. ¶ 5). Campbell's medical notes, completed after the examination, clearly reveal a Plaintiff that did not objectively appear to be in serious medical distress. See (Doc. No. 86-1 at 4).

Although Plaintiff's complaint does not appear to reflect this, Campbell avers that she was present for an additional medical examination on December 15, 2008. (Id. ¶ 6). Campbell states that she and Dr. Hassan treated Plaintiff during a scheduled medical appointment for complaints related to head pain and dizziness. Dr. Hassan ordered x-rays, which were conducted on December 18, and there was no evidence of bone injury uncovered. Plaintiff was prescribed Tylenol and released. (Id.; Doc. No. 1 at 23 ¶¶ 42-43).

In her affidavit, Defendant Joanne Harris testifies that she reviewed Plaintiff's medical records and that she only provided medical treatment for Plaintiff on one occasion. See (Harris Aff. ¶¶ 5, 7). Despite this apparent conflict between Plaintiff's allegations and Harris' affidavit, it is of no moment because the allegations pertaining to Harris in paragraphs 22, 31, and 33 are the same allegations as were alleged against Defendant Lucia, and the Court has concluded that those allegations are insufficient to set forth an actionable claim under the Eighth Amendment. The remaining allegations in paragraph 40 show that Plaintiff was treated by Harris on December 8, 2008, and prescribed medication for the professed pain he was experiencing. This clearly does not demonstrate a deliberate indifference to Plaintiff's medical needs.

These accounts provided by Plaintiff and Campbell and Harris do not differ materially. Rather, they show a Plaintiff who believed that he was entitled to more medical treatment, or a difference course of treatment, than he actually received. The allegations in Plaintiff's complaint do not demonstrate a medical condition that was serious such that Campbell or Harris should

11

have been, or that either of them actually were, aware of it. Deliberate indifference, which the Plaintiff must show, requires that the defendant know of and purposefully ignore "an excessive risk to inmate health or safety . . ." Farmer, 511 U.S. at 837. "In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Plaintiff's complaints of pain to Campbell and Harris do not represent an objective demonstration that he had serious medical needs that could not be addressed through a properly scheduled medical appointment. In the present case, Plaintiff's allegations fail to demonstrate that he ever communicated information to Campbell or Harris which could support a finding that those medical needs were sufficiently serious, and accordingly, Plaintiff has failed to forecast any evidence that Campbell or Harris purposefully ignored a known risk to his health or safety. Defendants Campbell and Harris' motion for summary judgment will be granted on all claims raised in Plaintiff's complaint.

3. Defendants Eaves, Hinkle, Heh, Pressley, Cortiza Bennett, Nance, Triplett, Sturdivant, Stanback, and Gaddy

Plaintiff contends that the above-named Defendants violated his rights as protected by the Eighth Amendment by repeatedly expressing a deliberate indifference to his serious medical needs. Defendants have offered several affidavits of various medical professionals that conducted medical examinations or other treatment of Plaintiff. Additionally, Defendants have provided the affidavit of Dr. Phillip E. Stover, a physician who has served as a Medical Consultant for the Division of Prisons, since 1993, and who reviewed Plaintiff's medical records as it pertains to the November 27th extraction. (Doc. No. 78-7: Stover Aff. ¶¶ 3, 5).

Following the filing of the three separate motions for summary judgment by the Defendants, (Doc. Nos. 77, 83 &85), Plaintiff was advised, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his obligation in responding to the motions for summary judgment. (Doc. No. 87). Plaintiff filed a response to the motions for summary judgment of Defendants Lucia and Defendants Campbell and Harris, but Plaintiff offered no evidence in opposition as provided for in the Roseboro Order, that is, for example, affidavits or declarations to support his allegations. (Doc. Nos. 88, 89). Plaintiff filed a supplemental response and argued that "he is not obligated under the process of adversarial procedure to prove his position" in the face of what this Court concludes are the Defendants' well-supported summary judgment motions. (Doc. No. 95 at 5). Plaintiff contends that under Whitley v. Albers, the burden in a motion for summary judgment rests on the moving party to prove that they do not have the "culpable state of mind" to support a claim under the Eight Amendment. (Id. at 6).

Plaintiff's responses, although not sworn or in the form of a declaration, make plain that his complaint expresses disagreement with the course of treatment which he received, but this disagreement with the course of his medical treatment does not entitle him to relief in this Section 1983 action. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). For instance, Plaintiff argues that he "had only received medical treatment consistent with the sick-call request, seven-days after the first documented request for x-rays. The doctor . . should've requested a CT scan ... as requested to negate the presumption of a slight concussion." (Doc. No. 95 at 11). While quoting from his medical records, Plaintiff simultaneously lodges an objection to the Court's consideration of the medical records as compiled by the staff at Lanesboro Correctional. (Id.). Yet, Plaintiff does not dispute the accuracy of the contents of the records submitted. Moreover, these records are

13

offered to challenge Plaintiff's specific allegations that one or more of the defendants were deliberately indifferent to his serious medical needs by failing to respond to his calls for treatment. This objection is overruled.

The medical evidence and the remaining evidence presented demonstrates the following uncontested facts: On November 27, 2008, Plaintiff was masturbating in his cell around noon and was observed by Nicholson and she ordered him to stop; Plaintiff refused to submit to handcuffs, and he was pepper sprayed; an extraction team was assembled because Plaintiff would not voluntarily or peaceably exit his cell; Plaintiff hid under his mattress as the extraction team entered his cell; the extraction team finally subdued him, placed him in handcuffs and ultimately into full restraints; Plaintiff was removed from his cell and taken to a shower for the purpose of decontamination; Plaintiff was seen by medical staff on the 27th, and over the course of the next few weeks for complaints regarding pain in his head and body; Plaintiff was treated with pain medication and x-rayed, and the x-rays were negative for bone damage.

These uncontested facts, along with the opinions expressed by the treating professionals that have been named herein as defendants, show that Plaintiff has failed to carry his burden of alleging material facts which can support his claims of violations of the Eighth Amendment. In short, Plaintiff has failed to show that he had a serious medical need which was not treated by the various defendant nurses. It follows, then, that as Plaintiff has failed to demonstrate a case of medical indifference to serious medical needs under the Eighth Amendment then all of the medical personnel are entitled to summary judgment on this issue. Likewise, those officers Plaintiff has named that he alleges were indifferent to his serious medical needs are entitled to summary judgment on this issue.

    B.    <u>Excessive Force</u>

1. Defendants Nicholson, Pressley, Cortiza Bennett, Nance, Triplett, Sturdivant, Stanback, and Gaddy

In this third motion for summary judgment, Defendants contend that Plaintiff has failed to present a genuine issue of material fact as to whether the use of force on the day of extraction was excessive or otherwise violative of the Eighth Amendment.

It is well established that the excessive use of a force against an inmate by prison officials violates the Eighth Amendment's prohibition on cruel and unusual punishment. Hudson v. McMillan, 503 U.S. 1, 5 (1992). The Supreme Court of the United States has recently reminded courts that the "core judicial inquiry" in Section 1983 actions alleging excessive use of force in violation of the Eighth Amendment is not whether a certain level of injury was sustained by the inmate, but "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically for the very purpose of causing harm." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (quoting Whitley, 475 at 320-321). "[T]he subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment . . ." Graham v. Connor, 490 U.S. 386, 398 (1989) (citing Whitley, 475 U.S. at 320-21). However, in addition to this subjective showing, the plaintiff "must also satisfy an objective requirement; he must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (citing Hudson, 503 U.S. at 8).

In order to evaluate the excessive use of force claim, the court should balance the following factors: (1) the need for the use of force; (2) the relationship between the need and the amount of force ultimately used; (3) the threat as "reasonably perceived" by the prison officials;

and (4) the efforts made by prison officials to limit the "severity of a forceful response." Hudson, 503 U.S. at 7. Where the evidence shows a "rational reaction and measured response" to inmate resistance and threats, the evidence of malicious and sadistic action on the part of the officers will be lacking. Stanley, 134 F.3d at 635. On the other hand, where the evidence shows, for instance, repeated blows were administered for the purpose of causing harm, malicious and sadistic conduct can be found. Id.

In the present case, Plaintiff's complaints of excessive force fail under this governing law. As summarized above, the officers were responding to an inmate that was admittedly masturbating in his cell, in the middle of the day, and in full view of passers-by in the jail corridor. This action represents a violation of the prison code of conduct, which Plaintiff cannot reasonably contest. Plaintiff admits in his complaint that he actively resisted handcuffs and full body restraints and that he hid under a mattress when the extraction team entered his cell. There is no evidence that the officers had malicious or sadistic intent in entering his cell, and that each escalation in the use of force was inspired by Plaintiff's active and vocal resistance to the lawful commands from the officers.

While all prisoners are entitled to Eighth Amendment protections against excessive use of force, inmates do not have a right to call the shots when it relates obedience to lawful commands from the officers. Plaintiff, through his criminal conviction, has ceded, voluntarily or not, his freedom to go as he pleases and to chose which command to follow and which command to disregard. Further, the medical evidence, through the many medical, sick-calls Plaintiff participated in, demonstrate that he did not suffer serious injury which was caused by an excessive use of force. Rather, Plaintiff's injuries were wholly consistent with the injuries of any inmate who actively resisted four or five officers who were carrying out lawful actions in

16

restraining an inmate.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's claims of excessive use of force will be granted.

    C.        Remaining Claims

Plaintiff's complaint regarding the process and outcome of the disciplinary procedure is without merit. Plaintiff admits in his complaint that he was masturbating and he does not challenge the B-06 charge as a violation of his constitutional rights. Plaintiff was given written notice of the charges against him, but Plaintiff refused to participate in the scheduled hearing on December 5th, and in any event the evidence given by Nicholson and other officers, as to his nude conduct in his cell is simply overwhelming and uncontested, and Plaintiff's guilt was upheld following his appeal. See (Doc. No. 78-6: Record of Disciplinary Proceedings *attached to* Affidavit of Billie J. Weaver at 1-18). This claim is dismissed.

For the reasons stated herein, Plaintiff's complaint regarding his failure in the grievance procedure against the officers for excessive force, or their reactions to his complaints of excessive force, are without merit. Plaintiff's claim of excessive use of force is not supported by the evidence, and accordingly, his allegations regarding the process and outcome of the grievance procedure is without merit.[5]

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

---

[5] Plaintiff filed a motion to receive legal mail contending that he was afraid that the Court's Orders would not reach him. (Doc. No. 106). A review of the ECF Docket shows no evidence that Court Orders, which were mailed by the Clerk of Court to the Plaintiff, were ever reported as undeliverable or as returned. To the extent Plaintiff contends that his legal mail is being, or has been tampered with, that is a cause of action separate and apart from Plaintiff's complaint, (Doc. No. 1), in this matter.

1. The Motion for Summary Judgment filed by Defendants Bennett, Eaves, Gaddy, Heh, Hinkel, King, Marshall, Nance, Nicholson, Pressly, Stanback, Sturdivant, Triplett, and Weaver, (Doc. No. 77), is **GRANTED**.

2. The Motion for Summary Judgment filed by Defendant Santa Lucia, (Doc. No. 83), is **GRANTED**;

3. The Motion for Summary Judgment filed by Defendants Campbell and Harris, (Doc. No. 85), is **GRANTED**;

4. Plaintiff's Motion for Summary Judgment by Procedural Default, (Doc. No. 102), is **DENIED**;

5. Plaintiff's Motion for Preliminary Injunction, (Doc. No. 105), is **DISMISSED** as moot;

6. Plaintiff's Motion to Receive Legal Mail, (Doc. No. 106), is **DISMISSED** as moot; and

7. Plaintiff's complaint, (Doc. No. 1), is **DISMISSED with prejudice** in its entirety and the Clerk of Court is respectfully directed to close this case.

Signed: September 19, 2012

_____
Robert J. Conrad, Jr.
Chief United States District Judge